# Zearfoss *v.* Norway Iron & Steel Company, Appellant.

*Negligence—Master and servant—Dangerous employment—Lack of in-*
*structions.*

Where an ordinary laborer in a steel works is hurriedly and im-
peratively ordered by the foreman to do certain work as a cupola
tender, as to which work he is unfamiliar and uninstructed, and it
appears that at first he objected, and then obeyed, and is injured while
performing the work, the question of the employer's liability for the
injuries sustained is for the jury.

Argued May 23, 1907. Appeal, No. 186, Jan. T., 1907, by
defendant, from judgment of C. P. York Co., April T., 1906,
No. 92, on verdict for plaintiff in case of John S. Zearfoss v.
Norway Iron & Steel Company of York, Pa. Before MITCH-
ELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before
BITTENGER, J.

At the trial it appeared that the plaintiff was injured on
June 17, 1905, while at work in defendant's furnace at a cupola.

The circumstances of the accident are described in the charge
as follows:

Plaintiff was engaged as a laborer in the yard of the defend-
ant company, unloading a car of sand. It was in the morn-
ing, shortly after going to work, about half past seven o'clock.
On that particular morning, for some reason not explained,
the man whose duty it was to attend, and charge, and care
for this cupola, and furnish the molten iron, or a part of the
molten iron, to the works, did not appear at this place of
business. It was a Saturday morning; and it was usual to

close the place at 12 : 45 o'clock on Saturday ; and it was necessary to do a certain amount of work before the shop was closed and the hands were discharged for the week. It seems to have been necessary that morning to get a heat in this cupola to produce the molten iron required for manufacture of articles in the shop, and the employment of the hands there. It was then that Mr. Baugher, who was the foreman of the hands in the yard and in the shop, and his assistant, Mr. Keiser, who were both present, called upon the plaintiff, according to his testimony, to take the place of this hand on the cupola, who had not appeared that morning, and to prepare the heat in the cupola. He was at work at the time unloading this car of sand, that we have spoken of, with another man ; and this foreman came and requested the plaintiff to take charge of the cupola ; that the man had not appeared, and that he should go up on the cupola platform, and get up the heat. He demurred at the time, according to his testimony, and said it was too late to do anything of that character that day. I infer—but the jury will draw their own inference—I infer that he meant to say that it was too late to get up a heat sufficient to have a moulding that morning, or before the shop closed, at 12 : 45. He said it was too late, and demurred about going up to the cupola. He testified that then Mr. Baugher said that he should go and hurry the matter, and get up the heat ; and that upon that request, or that command, he went to the cupola. It was about half past seven o'clock in the morning.

When he examined the cupola he found that before any heat could be made, or before the cupola could be used, it was necessary to clean it out. As he went to the cupola he found that the large partition did not extend between the cupola and shop below, as I understand, at that time ; but it was only above, where the platform was ; that this wooden partition had a hole or window in it between the cupola platform and the shop. He found that the cupola had to be cleaned, and in doing so it was necessary to use water, and he ordered the man who was down below to turn on the hose, when he gave him orders from the platform above. He testifies that when he was ready to have the water turned on, he called to the man below to turn on the water in the hose, and that he got no reply from him ; that he called to him again, and got no reply ; that he then

leaned out of this window or the hole in the partition that led to the foundry, and called to him. After calling some time the man made answer, but the dust was so great—or the foggy morning with the dust—and the noise was so great, that he did not seem to know where the call was coming from ; and then he leaned out of the window for the purpose of calling him again.

[He had not been there, I think, more than fifteen minutes, in the cupola, before he called to the man below ; and while he was looking down to see the man, with the dust so great that he could hardly see where he was to speak to him, he looked up suddenly, and he saw this crane coming toward him on this track, and only about two and a half feet from him when he first discovered it.] [8]

He was then leaning out of the window, with his head and shoulders out of the window ; and whether or not he had his hand on the beam at that time, or on the track, he is not certain ; but seeing the danger he was in, and a part of his body out of this hole, and the crane rapidly approaching, he made an effort to draw his body from the danger of being struck by the car, and threw himself back ; and, he said, in doing so, his hand got on the track. Whether it was necessary to put his hand there to withdraw his body is one of the questions which the jury will have to consider ; whether he did it in the endeavor to withdraw his body from still greater danger, or whether he placed his hand there when he was looking out of the window, and failed to withdraw his hand when he had the time to do so, and in the meantime to escape injury. That is one of the important questions that the jury will have to consider. He did manage to withdraw his body, but his hand remained on the rail,.which was supported by the beams, which I have already mentioned ; and he was standing facing the foundry. While in this position his thumb and front finger were caught by the wheel; and he says by wrenching the other fingers aside when he was struck he managed to save the balance of his hand, and keep it from being run over by this wheel.

But if, after considering all the evidence, you come to the conclusion that the defendant was guilty of negligence in maintaining this cupola and platform, and the opening, and the crane in near proximity, and not giving him proper

instructions, or warning, or giving him this particular work which he never performed before, why, then, the jury will have to proceed further.] [9] If you find there was negligence on the part of the defendant, you will have to proceed further to determine whether the plaintiff was himself guilty of such negligence as will prevent him from recovering in this case. The law requires the employer of hands to furnish them with reasonably safe tools and materials with which to work, and to furnish an ordinarily safe place for the employee to work in ; [and the law further requires also that the employee shall take upon himself the risk of his employment when properly instructed. In a case like this, where he is urged about the work, where some allowance is made for the employee, his not being as vigilant as he is at other times to take upon himself the risk of his employment—but he must be shown and made to understand the dangers connected with his employment, and to be able to comprehend the danger which he undertakes, and the risk which he takes when he goes into the employment] ; [10] and, if understanding the risks and dangers which he is in, if he is guilty of any negligence in the performance of his work which contributes to his injury—the injury which he may receive in any accident or injury resulting from this employment—why, then, he cannot recover damages against his employer for any negligence on the part of the employer. In other words, when both parties are proven to be negligent, it is impossible for the jury to divide the responsibility, or for the court to divide the responsibility—that is, the theory of the law—and that if he helps to produce, or causes or inflicts an injury upon him, or causes an accident by which he is injured, that he cannot then call upon the defendant to pay for damages which he helped to bring upon himself. There cannot be a recovery of damages in a case where both parties are negligent, or where any negligence is shown on the part of the plaintiff which contributed to this injury—the burden must be with the plaintiff.

The defendant's testimony in this case does not materially differ from or contradict the plaintiff's testimony as to his orders that morning as to his duties, nor as to the crane being there, and the placing of the crane there. It is in evidence, and not contradicted, that the plaintiff worked at annealing

at the works for two years; that this crane was not there, or not in operation.

The defense is, first, that the defendants were not guilty of negligence in anything that they did; and, secondly, that the plaintiff having been guilty of negligence by putting his hand there unnecessarily, and keeping it there, and not removing it in time to save these members, that he cannot recover. The witnesses for the defense testify that there were no such noises produced by this cinder mill, and by the chipping machine, as to deaden the sound or noise which the crane would make in running on that track; and that there was no such dust produced by this cinder machine, and the state of the weather that June morning, as to make it so that he could not see, or to produce such a darkness that the plaintiff could not see the danger that he was in by the approaching of this crane on those wheels; and that there was no such a noise but what he could have heard the crane approaching. The testimony on the part of the defendant is that the crane made a peculiar noise in starting, which could have been heard a considerable distance; that it made a noise when running, which would not be deadened by the noise of the cinder machine, and that the plaintiff could have heard it; that the sound could be heard outside of the shop, at the office, when that crane was running; and that the rail upon which this crane ran was five inches above the window—several inches from the window, the track, by measurement—and that other operators there had called the hands easily by just calling out at the cupola; that there was an opening in the boards below by which the call could be heard; and it was not necessary to put himself out of that hole at all in order to call to the hands below to turn on the water; that they heard otherwise the call of the operators.

[This case is peculiarly different from many cases of this character, such as damages by employers, from the fact that he was ordered to this particular work by the foreman suddenly, and ordered to hurry the work, and to take a position that he had not been accustomed to fill, and which he at first objected to occupying, and which he says he did not know the danger of, from that particular running of the crane past this hole or window in the partition.] [13]

Verdict and judgment for plaintiff for $3,000. Defendant appealed.

*Errors assigned* among others were (8–10, 13) above instructions, quoting them.

*Charles A. Hawkins*, with him *J. S. Black*, for appellant.—Plaintiff assumed the risk of his employment: Reese v. Clark, 146 Pa. 465; McNeil v. Steel Co., 213 Pa. 331; McIntire v. Steel Foundry Co., 208 Pa. 34; Kelly v. B. & O. R. R. Co., 11 Atl. Repr. 659; Hurley v. Steel Co., 186 Pa. 187; Whitley v. Evans, 30 Pa. Superior Ct. 41; Ingram v. Lehigh Coal & Navigation Co., 148 Pa. 177; Pawling v. Hoskins, 132 Pa. 617; Sheridan v. Gray's Ferry Abattoir Co., 214 Pa. 115.

A foreman is but a fellow workman: Railroad Co. v. Bell, 112 Pa. 400; Lineoski v. Coal Co., 157 Pa. 153; Velas v. Patton Coal Co., 197 Pa. 380; Spancake v. R. R. Co., 148 Pa. 184; Prevost v. Citizens' Ice, etc., Co., 185 Pa. 617; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; McGinley v. Levering, 152 Pa. 366; Carnagie v. Bridge Co., 197 Pa. 441; Kinney v. Corbin, 132 Pa. 341; Somer v. Harrison, 8 Atl. Rep. 799.

Defendant was not bound to guard against dangers it had no reason to anticipate: Tomaczewski v. Dobson, 208 Pa. 324; McKenna v. Martin, etc., Paper Co., 176 Pa. 306; Burns v. R. R. Co., 213 Pa. 280.

*James G. Glessner*, with him *K. W. Altland*, for appellee. —The duty to provide a safe place to work and to maintain it in a reasonably safe condition by inspection and repair is a direct, personal and absolute obligation from which nothing but performance can relieve the employer, and the person to whom it is delegated becomes a vice principal, whose negligence is the negligence of the employer: Lillie v. American Car & Foundry Co., 209 Pa. 161; Schiglizzo v. Dunn, 211 Pa. 253; Vorhees v. Ry. Co., 193 Pa. 115; O'Brien v. Sullivan, 195 Pa. 474.

Frank Baugher, who was foreman, had control of the foundry, pattern shop and yard, practically all that there is about a foundry (excepting the office), was a vice principal: Tagg v. McGeorge, 155 Pa. 368; Mapes v. Pittsburg Provision & Packing Co., 31 Pa. Superior Ct. 453.

OPINION BY MR. JUSTICE ELKIN, June 4, 1907 :

We would agree with the learned counsel for appellant that there could be no recovery in this case if the injured party had been the regular cupola tender, or if it had been shown that he was familiar with the surroundings in the place where he was hurriedly sent to work and acquainted with the duties he was ordered to perform.   Under such circumstances an employee would assume the risks of his employment, including all dangers, open and obvious.   In the present case, however, the appellee was a laborer, not familiar with the work he was imperatively directed to perform, nor with the situation into which he was hurriedly ordered.   He objected when ordered to do this work, but finally yielded when the foreman insisted. He did not act voluntarily, but followed the direction of his superior.   After the cupola was prepared for washing out it was his duty to call for water, which was turned on by an employee on the floor below.   Because of the confusion in the foundry, his calls for water were not heard, and, finding an open window, it was but natural to lean out in order to make the water-man hear him.   The use made of the window was therefore a proper one.   The moving crane passing within six inches of the open and unguarded window made the situation extremely dangerous to an employee unfamiliar with the conditions.   Under these facts the learned trial judge would not have been warranted in holding as a matter of law that there was no negligence on the part of the defendant company. This was a question for the jury where it was left with proper instructions as to the respective duties of the parties.

The question of contributory negligence was also for the jury.   Appellee was ordered to work hurriedly.   It was not his regular work and he had no previous knowledge of the conditions in the cupola.   It was for the jury to determine whether he exercised the care required under the circumstances in his attempt to extricate himself from the rather perilous position in which he found himself as the crane approached.   While the case may be considered a close one and not free from difficulty, we think it was properly submitted to the jury.

Judgment affirmed.